Please call the next case. Please call the next case. Counsel, you may proceed. Good afternoon, Your Honor, Counsel. My name is William Dwyer. I represent the Village of Westmont in our appeal of the Circuit Court decision of January 31st, 2012, finding that the decision of the Commission, excuse me, dated January 31st, 2012, was against the manifest weight of the evidence. Really, the issue here is a question of facts, and I believe that the Circuit Court judge substituted her decision for the Commission itself. And without going into great length about the manifest weight of the evidence standards, could the Commission decision itself read or taken as itself stand for the proposition that there's reasonable inferences to be drawn that the petitioner suffered at best a temporary aggravation of a preexisting condition to his low back when he had a work injury back on March 3rd of 2006? There's no dispute. The man's a police officer. He had a run-in with a couple of other of his fellow officers. He's a sergeant in a domestic dispute, and he had a problem with an aggravation of his low back condition. Now, is it possible that the Commission in their decision could reasonably infer that three months before this date, the man was in an active treatment pattern with the eventual surgeon, Dr. Heerman, back in August of 2006. He finally goes and undertakes the L-4-5 disectomy, the surgery that is the subject matter of this dispute. There's a treatment pattern. Is it a reasonable inference that the initial treatment before the accident, the man had a disc herniation at his L-4-5 level? He aggravated it early. I believe it was in August of 2005, based upon the records indicating a sneeze. He has an MRI done. It shows the disc herniation back in August of 2005. He eventually comes under the care of Dr. Heerman late in 2005. Another subsequent December 2005 MRI shows a worsening of the disc herniation based upon the MRI finding. Could the Commission itself infer from that evidence, even by the claimant himself, sending a memo to his boss, the chief, saying that, you know, Chief, I'm going to have to be off work because I have this necessary surgery that's been recommended to me. Could the Commission also reasonably infer in January of 2006 when Dr. Heerman says, I think you need some surgery. You need the L-4-5 level. You need a disectomy. Would it be reasonable for the Commission to infer that he might have sought out a second opinion with Dr. McHale and, in fact, indicate that based upon those findings, Dr. McHale said surgery, and this is in January of 2006, approximately two months before his alleged accident, that, yes, surgery would be warranted under these circumstances, but let's try some conservative care first. He has conservative care. And could the Commission itself infer from these epidural steroid injections he had some gradual improvement. He has his work incident. There's no issue as to the accident itself. The treatment pattern continues. And, again, he goes back to Dr. Valente, and I believe it's Dr. Chang for the pain management, and continues the epidural steroid injections after his work injury accident. And the Commission decision indicates that they're struck by how his care and treatment waxed and waned. And, in fact, in April of 2006, April 22, 2006, excuse me, 24, 2006, he seized Dr. Valente's partner, Dr. Chang. Could the Commission or the record indicate a 70% improvement in his low back pain? Okay. Valente indicated the claimant was guarded as to the right-hand side, which was unchanged from previous visits, but the leg was far more tender, especially noted upon straight leg issues. So the testimony or the evidence from Valente was not that everything was unchanged, right? Well, I think there is testimony and evidence. You're correct on that point, but there's also testimony and evidence that in December of 2005, you had the same findings. In fact, if there was an aggravation. And then, again, you say by May 22, the following month, 2006, after this improvement, Dr. Chang also notes he has an additional improvement, and he's essentially discharged. He says, come back if you need any further care and treatment or if you need another epidural steroid injection.  And then the Commission decision actually speaks to that point when they're struck by his assessment itself. Now, can they have the ability, whether the decision is two to one or right or wrong, if the inferences that are made just in these medical opinions and these causations, could they infer, in fact, that the man suffered a temporary aggravation of a preexisting condition? Notwithstanding the arbitrator decision, I believe that the circuit court substituted its finding from the Commission's decision in awarding the man a temporary aggravation of 5 percent of a person. There's no logic. There's no explanation. There's no documentation from the circuit court in the order of November 5, 2012, just that it's against the manifest way of the evidence. The opposite result is clearly apparent. But I believe that the Commission decision itself is 11 pages. There's also a dissent there. There's also indications from the two commissioners as to what they base their opinion on, and I believe it's reasonable. So in other words, I believe that the circuit court overstepped its boundaries, overstepped its authority, per se, and not finding that the Commission decision had these inferences that were made in regards to this man's current condition of ill-being. It wasn't causally related. The surgery that the man eventually had, even Dr. Ehrman, the surgeon who he goes back to, testifies in his evidence deposition that it's the exact same procedure he was recommending. Do any of the medical experts dispute the notion that the March 3 arrest was one causative factor in his current condition of ill-being? One causative factor or a causative? A causative factor. I don't believe that there's an assessment there. Is it a causative factor to have the same surgery? Logically. Does anybody, does any medical expert dispute that notion? Was it a causative factor? I don't believe. I think there's also, there's a Dr. Gleason who performed an independent medical evaluation. I think even with Dr. Ehrman, the treating surgeon, doesn't say until his evidence deposition testimony is he performs the same procedure that he would have had before the work accident or injury. Ehrman testifies with a reasonable degree of medical certainty that the accident of March 3 exacerbated the claimant's back condition necessitating the surgery. Do you dispute that he testified to that? No, I don't dispute that he testified to that. Okay. So if it's a cause, then under CISPRO, he can recover from it. If you're talking about a causative factor, that's correct. Right. But, Your Honor, in all due regard, I don't know how you can accelerate or aggravate or exacerbate a preexisting condition when the same surgery that the man undergone after his work injury was the exact same procedure that the doctor who you're testifying to recommended in December of 2005 and, in fact, in January of 2006. So the man decides, well, maybe I push it off. And there's also, is it reasonable to infer that there are activities of daily living, the records of the treaters after his work accident, shows improvement, waxing and waning symptoms. I believe it also indicates exacerbations from lifting the laundry at work, as noted in the records of Dr. Chang. Well, let's assume that's true. I think his point is even if you have daily activities of aggravating and driving to Wisconsin. Yes. Let's assume that everybody agrees that that's exactly what happened. Couldn't the Wisconsin trip, the daily activities, and the work activities all be a causative factor? Isn't it enough to allow recovery? It only has to be a causative factor, as you know, not the primary or so forth. Understood. And a causative factor itself, though, is to what? To the surgery that the man had and was recommended to him before his work accident. Well, we had several cases this morning where people had repetitive trauma carpal tunnel. They had surgeries, you know, several surgeries. It apparently worked. And then they went back to the same job and the symptoms returned. Isn't that aggravation of a preexisting condition? Just because he had an operation doesn't end it, does it? They did find it. And the commission found that he did have a temporary aggravation of a preexisting condition, but that the current condition regarding the surgery itself was not causatively related to his work injury. And I think that's where the difference may lie in some of the earlier cases this morning. But I think what you get to is that the man had this exact procedure that was before the work injury, before the work accident, before his activities of daily living. It was inevitable that he was going to have the surgery, not only the fact that his own surgeon recommended beforehand, but he sought a second opinion with Dr. McHale as well, who indicated that surgery was reasonable. And this is before the work accident or injury. So is it a causative or could it be a causative factor in a temporary aggravation of a preexisting condition? I believe that the circuit court, without any discussion or any inferences, just substituted its decision in place of the commission. Well, yeah, but there are certain things in what the commission did here that just don't make sense. They turn around and they say that they point to Ehrman's note that the December 2005 and the March 2006 MRIs don't show a significant change in the claimant's herniation. The herniation had worsened between August 2005 and December 2005. But they totally disregarded it. There's an MRI report in there in which the radiologist stated that the herniation did worsen. Yes. Because the radiologist had compared the March MRI to the August 2005 MRI. But he didn't. With no reference to the December 2005 MRI. The December 2005 MRI showed a worsening condition from the August 2005 MRI. And that was actually at the time the officer made the request and the doctor told him he had to have the surgery. Then the commission turns around and finds that the temporary aggravation of the claimant's preexisting injury had resolved as of May 22, 2006, when he reported to Dr. Chang. But that's not what Dr. Chang's report says. Chang's report says that the claimant reported that he felt 70% improved after the steroid injection he received on April 10th. He also wrote that he advised the claimant to continue taking his medication for one more month and then take it as needed. And he advised the claimant to return for a repeat injection. So I guess it hadn't totally resolved at it by March 22, 2006, as the commission suggests. I think as to the April 24, 2006 visit with Dr. Chang, he noted the 70% improvement the following month later. There's actually noted additional improvement. I'm looking at a May 22 report. May 22, 2006. And if they're requested to come back and have another epidural steroid injection, I don't believe that it indicates. Well, they said it had resolved. They indicated that it resolved based upon their decision. You're correct. And from that effect, it's basically he went back to his doctor. He had an exasperation again with either the laundry and the... Wait a minute. On the same day they said it resolved, Chang said it hadn't. He said to come back if there's any other problem. He said the guy only reported 70% improvement, told him to continue to take his injection. So somebody doesn't know what they're talking about. Either it had resolved or it hadn't. Well, I think that the pain resolved when he had the surgery in August of 2006, and it actually happened to be the same procedure which Dr. Ehrman recommended that was authorized or at least he was going to undergo prior to the work injury. So I don't think that if we can argue, and then again we have differing facts. In other words, if we have facts that are in dispute or the commission itself, you know, the decision is what the decision is. Whether good, bad or indifferent, I believe that the circuit court overstepped its boundaries in finding that the clearly opposite result is clearly apparent. I think on these records, based upon the preexisting history, based upon the recommendations and my prior argument, I believe that the circuit court decision should be reversed and the commission decision should be reversed. What evidence can you point to in the record that this man had a temporary aggravation that had resolved itself by May the 22nd, 2006? What in the record? First off is that he had a current, by the time he went to Dr. McHale in January of 2006, he was in the process of undergoing conservative care and treatment in the form of epidural steroid injections and conservative measures as well. If you notice in the medical records, nonwithstanding in the absence or vacuum of this work incident, that he has the same consistent care and treatment. In fact, has two epidural steroid injections, if I'm not mistaken, before his work injury. Has a couple of them afterwards as well. And it's a concurrent course of treatment that all relates back to his original recommendation or to his original disc herniation that is noted on two prior MRI studies and also the same MRI study from March of 2006. But what supports the commission's statement that it was a temporary aggravation that resolved on May the 22nd, 2006? I think that if you take the medical records in their totality, if you take the course of treatment, if you take the examining physician, Dr. Gleason's testimony, that the man suffered a temporary aggravation of a preexisting condition that would have resolved within six to eight weeks. And I think But the only evidence in the record of anything happening on May the 22nd was Chang. True. Because what they related to and one of their inferences as well is to they're also struck by Dr. Valente's assessment as well. And I think that these are inferences that the commission can make. And I believe that it's proper for them to make the decision, at least the decision itself, whether it's 5 percent or 10 percent. What did they say about Dr. Valente's assessment? It says the commission is struck by Dr. Valente's assessment of the Petitioner shortly after the work-related accident. And also Dr. Ehrman, who is the of the three MRIs of the Petitioner's low back, an examination on March 9th of 2006. Dr. Valente noted the Petitioner's physical examination was unchanged from previous visits, even though the Petitioner complained of increased leg tenderness. And his evaluation of the Petitioner's MRIs, Dr. Ehrman noted deterioration of the L5S1 herniated disc between August and December of 2005. It was of the December 2005 MRI the Petitioner had increased mass effect on the right S1 nerve wood. But what did Valente actually write? What did Valente actually write? Valente, and I believe that the He says the claimant was guarded to the right hand side, which was unchanged from previous visits, quote, but the leg was far more tender, especially noted upon straight leg raises. Does that sound like that Valente said his condition was unchanged from previous visits? I don't have the record in front of me. I do. I don't. I've got the quotes. I agree what you're reading is what the record itself says. It's a pain management doctor. I'm talking about the evidence from the preexisting condition, as well as what the, not only the orthopedic surgeon, but as well as the doctor's care and treatment of being the same procedure that was performed and recommended before his work accident. Counsel, your time is up. You'll have time to reply. Thank you so much. I appreciate your time this afternoon, Your Honors. Good afternoon, Your Honors. My name is Michael Rasek. I'm here on behalf of the employee, Mr. Brenza. I intend to be very brief because the questions I heard from the Court, I think, have restated some of the things I was going to say here. The real deficiency in the commission's, the two commissioners' majority decision is that they rely pretty much upon, rely almost entirely upon the fact that the MRI apparently did not change all that much between August and December and in March. The problem is that the commission's decision ignores the fact that in January, this gentleman was fine. Everybody, all the evidence was that he had no neurological symptoms, that he was neurologically impacted before this March accident. And the difference in his condition, as Dr. Ehrman recognized, was that his symptoms increased afterwards. He lost his S1 reflex. As Your Honor noted, Dr. Valenti noted not that his condition was unchanged, but that his condition was, in fact, much worse. And he's even getting, he's even getting the steroid injections in July. Another point that Dr. Ehrman made that I think threads through all of this is that before this, this officer was doing fine. After the March incident, the condition of his back, whatever was in there, shown by the MRI, was causing him to have problems now with the activities of daily living. In other words, as Officer Branza said, picking up some laundry and putting it to the washer was enough to set him off. And Dr. Ehrman said that was the problem. The bottom line is that the medical testimony was that there was a significant change in his condition from somebody who was well to somebody who had a problem, leading to steroid injections even on July the 6th. He was still having problems then. That's way beyond that May 22nd time. Unless Your Honors have some questions for me about this, I do not intend to address Manifest Weight Law or anything else at this point. You've heard enough of that. Thank you very much. Thank you, Counsel. Counsel, you may reply. The Commission also noted on April 24th, 2006, Dr. Chang reported a 70 percent improvement with his pain. Dr. Chang recommended resumed physical therapy and prescribed Lyrica. On May 22nd, 2006, the Petitioner reported further improvement from his April 24th, 2006 epidural steroid injection. Dr. Chang noted the Petitioner often forgot to take his Lyrica because of his improved pain and was able to work very heavily as a police officer. Dr. Chang recommended the Petitioner return for an ESI epidural steroid injection as the pain became worse and found that overall the Petitioner was doing much better. In regards to the care and treatment, it must be stated that the man is a police officer. He worked his regular duties without any medical restrictions until his surgery in August of 2006. The employer also submits again that the circuit court judge's decision should be reversed. Thank you. Thank you, Counsel, both for your arguments. This matter will be taken under advisement. A written disposition shall issue. The court will stand in recess until 9 a.m. tomorrow morning. Thank you. Have a good evening.